IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

INDEPENDENT PRINTERS WORLDWIDE, INC.,
*et al.*,

        Plaintiffs,

v.                                                                         Civil Case No. 3:15-cv-185-JAG

SCOTT T. COLE, *et al.*,

        Defendants.

## OPINION

In 2009, two Virginia limited liability companies, Independent Printers Worldwide ("IPW") and Independent Printers Worldwide Communications, ("IPWC"), began a business relationship with an Oklahoma limited liability company, the Convenience Store Alliance (formerly Danielson Marketing Services) ("DMS/CSA"). This relationship later included DMS/CSA's parent company, Danielson Oil Company (formerly Danielson Fuel Services) ("DFS/DOC"). In 2012, one of IPW's employees, Scott Cole, left IPW to join DMS/CSA and the parties' business relationship soured. IPW now brings this suit against Cole, the two Oklahoma companies, and Jerry Danielson, Steve Hopkins, and Mike Lawson, individuals who worked for either DMS/CSA or DFS/DOC.

All of the defendants insist this Court lacks jurisdiction over them, arguing they do not have sufficient minimum contacts with the state of Virginia. Although most of the defendants possess only tangential connections to the Commonwealth, IPW adequately alleges that Scott Cole and DMS/CSA directed business activities at the Commonwealth. These business activities and contacts allow this Court to exercise personal jurisdiction over Cole and DMS/CSA. The

remaining defendants lack the necessary contacts with Virginia, and consequently, the Court DISMISSES Danielson, Hopkins, Lawson, and DFS/DOC from this action.

## I. Background

In 2009, DMS/CSA operated a small-scale convenience store buying group named "The Profit Plan" ("TPP"). DMS/CSA envisioned that TPP would assist convenience store owners nationwide in reducing owners' business costs and increasing efficiency. DMS/CSA sought IPW's assistance to create a business plan for TPP. IPW, a global procurement company, provides consulting services primarily for independent printing companies. IPWC, IPW's affiliate, offers marketing products for clients. IPW and IPWC operate in Powhatan, Virginia.

DMS/CSA, headquartered in Oklahoma, contacted IPW for support in April 2009. IPW initially provided free advice before entering into a formal consultation agreement with DMS/CSA on December 10, 2009. The two entities agreed to increase consultation services and signed a second agreement in March of 2010. Steve Hopkins, the Director of Sales and Marketing for DMS/CSA,[1] signed the consulting agreement on behalf of DMS/CSA. During this time, Cole worked full time from Virginia, to assist TPP[2] in increasing revenue.

From May 2 through May 5, 2010, Mike Lawson, Hopkins, and two other DMS/CSA and/or DFS/DOC representatives met with IPW in Virginia to discuss a possible partnership with DMS/CSA. (Dk. No. 11-1 at ¶ 8.) Following this visit, IPW mapped out a six-year business plan for TPP. To memorialize this agreement, IPW and DMS/CSA entered into an agreement titled the "Letter of Intent."[3] (Dk. No. 1-1 at 18.) The Letter of Intent gave IPW a 40% ownership interest in DMS/CSA. If DMS/CSA failed to reach its $80,000 per month revenue

---

[1] Hopkins now apparently serves as the Vice President of Operations. (Dk. No. 11-1 at ¶ 3.)
[2] DMS/CSA began referring to TPP as Convenience Store Alliance, LLC, ("DMS/CSA") in 2010.
[3] This Letter of Intent is the subject of ongoing litigation in Oklahoma between Danielson Marketing Services, LLC (DMS/CSA) and IPW. (Dk. No. 12-1.)

2

goal, either party could terminate the agreement upon a 90-day written notice. The Letter of Intent explicitly states that Oklahoma law governs any disputes arising from the document and that the Letter of Intent created no obligations between the parties. (Dk. No. 1-1 at 18.)

In September 2010, IPWC and DFS/DOC executed a Group Purchasing Supply Agreement ("Supply Agreement"). (Dk. No 1-1 at 21.) The Supply Agreement made IPWC the preferred supplier for DFS/DOC and DMS/CSA members. In 2011, IPW and DMS/CSA agreed Cole should relocate to Oklahoma to work full time for DMS/CSA because it was not expanding as desired. DMS/CSA agreed to pay 60% of Cole's salary while he worked exclusively on this project. While in Oklahoma, Cole established national contracts with PepsiCo, Coca-Cola, McLane, and other corporations. Cole lived in Oklahoma from March 2011 until April 2012. He moved back to Virginia in May 2012 to focus his work on a newly acquired contract with McLane, a grocery store supplier.

In 2012, DMS/CSA, specifically Cole, Bendele and Lawson, made a presentation to Phillips 66, a large petroleum company. The parties hoped Phillips 66 would partner with DMS/CSA and this partnership would bring millions of dollars in revenue to DMS/CSA. On August 1, 2012, DMS/CSA made a follow-up presentation to Phillips 66,[4] prompting Phillips 66 to propose a trial implementation period for DMS/CSA. Shortly thereafter, on August 16, 2012, CSA accused IPW of taking advantage of DMS/CSA in the partnership. Cole resigned from IPW and accepted a position with DMS/CSA four days later. On August 26, 2012, DMS/CSA contacted Dan J. Bendele[5] to terminate the parties' relationship.

Based on Cole's resignation and an alleged breach of an agreement between IPWC and DFS, IPW and IPWC bring this action against Cole, DMS/CSA, DFS/DOC, and three

---

[4] The complaint does not allege where this presentation occurred.
[5] Bendele is the President and CEO of IPW. (Dk. No. 1-1 at ¶ 11.)

3

individuals from Oklahoma. IPW alleges Cole tortiously interfered with IPW's business expectancies when he left IPW and joined DMS/CSA. IPW also asserts a claim against Cole for breach of the duty of loyalty. The complaint also contains a statutory business conspiracy claim against all defendants. Finally, IPWC brings a breach of contract claim against DFS/DOC.

IPW also names Jerry Danielson, Mike S. Lawson and Steve Hopkins as defendants. All three reside in Oklahoma, and DFS/DOC or DMS/CSA employ them. Danielson is the owner and president of DFS/DOC, and Lawson served as the President of DMS/CSA. Hopkins is the Vice President of Operations. The defendants now assert that the case should be dismissed because they lack the requisite minimum contacts to be brought into this Court.

## II. Analysis[6]

Resolving a nonresident defendant's personal jurisdiction challenge requires a two-step inquiry. *Lufthansa Sys. Infratec GmbH v. Wi-SKY Inflight, Inc.*, No. 3:10CV745-JAG, 2011 WL 862314, at *3 (E.D. Va. Mar. 9, 2011) (citing *ESAB Group v. Centricut*, 126 F.3d 617, 622 (4th Cir. 1997)). The Court must first determine whether Virginia's long-arm statute authorizes jurisdiction over the defendants. *Id.* Second, the Court must determine whether due process forbids the exercise of jurisdiction. *Id.* Virginia's "long-arm statute extends personal jurisdiction to the outer bounds of due process, [so] the two-prong test collapses into a single

---

[6] The defendants challenge personal jurisdiction under 12(b)(2). Consequently, IPW must establish personal jurisdiction by a preponderance of the evidence. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). When the court decides a personal jurisdiction motion without a hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The Court must construe all relevant pleading allegations in the light most favorable to the plaintiff and "draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

4

inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).

The due process clause prevents a person from being brought to court and bound by judgments in a state where he has no significant "contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). The due process analysis considers whether the out-of-state defendants have certain "minimum contacts" with the forum state and ensures that maintaining the case does not offend "traditional notions of fair play and substantial justice." *Id.* at 316.

Under the minimum contacts test, nonresident defendants may be subject to either specific or general jurisdiction. General jurisdiction exists "when [the defendant's] affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (internal quotation marks omitted).

Alternatively, a court has specific jurisdiction over parties when the claims "arise out of or relate to" the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The Court examines specific jurisdiction under a three-part test: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally

reasonable."[7] *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

The Court finds that IPW fails to show a prima facie case for personal jurisdiction against the three individual defendants from Oklahoma and DOC/DFS, but the Court retains jurisdiction over Cole and DMS/CSA. Cole's employment and residence in Virginia, along with the claim that this action arises out of his conduct in the forum state, provide enough to establish personal jurisdiction at this stage. Furthermore, the relationship between IPW and DMS/CSA sufficiently shows DMS/CSA availed itself of the benefits of doing business in the Commonwealth. The Court will discuss each defendant in turn.

*A. Individual Defendants*

1. Scott Cole

IPW employed Cole for approximately six years. During most of this time period, Cole worked at the IPW office in Powhatan, Virginia. From March 2011 to April 2012, Cole moved to Oklahoma to work for IPW on the TPP project. He continued to work for IPW, but DMS/CSA paid a portion of his salary.

Under the factors listed above, clearly Cole purposefully availed himself of the benefits of working and living in Virginia.[8] By working for IPW, he engaged in "significant [and] long

---

[7] The Court weighs the following five factors to determine constitutional reasonableness: (1) the burden on the defendant, (2) the forum state's interest in the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

[8] Courts look to several factors when determining whether personal jurisdiction exists in the business context: (1) whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221 (1957); (2) whether the defendant owns property in the forum state, *see Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d

term" business activities in Virginia. *See Consulting Eng'rs Corp. v. Geometrc Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citing cases). Although Cole apparently now lives in New Jersey or perhaps Oklahoma, during the period in question Cole lived and worked in the Commonwealth.

Cole's actions in Virginia give rise to this cause of action. He allegedly took steps to tortiously interfere with various contracts and business expectancies while employed in Virginia. The filings lack detailed information about where Cole inflicted the alleged tortious injury, but Cole offers no argument that the underlying allegations took place while Cole resided in Oklahoma rather than in Virginia.

Finally, the Court looks to whether the exercise of jurisdiction is constitutionally reasonable. In addressing reasonableness, the Court looks to the forum state's interest in the litigation. Virginia has an interest in this dispute as it involves alleged harm to a Virginia company. *Burger King*, 471 U.S. at 473 (finding "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"). The Court finds that exercising personal jurisdiction over Cole is constitutionally reasonable. Cole conducted business in this state as an employee for IPW, and Cole allegedly caused tortious injury in Virginia. Cole could reasonably foresee a possible lawsuit against him

---

208, 213 (4th Cir. 2002); (3) whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221; *Burger King*, 471 U.S. at 475–76; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475–76, 481; (5) whether the parties contractually agreed that the law of the forum state would govern disputes, *see id.* at 481–82; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985); (7) the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith*, 901 F.2d at 39; and (8) whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

7

in Virginia court under these circumstances. Construing all questions of jurisdiction in favor of IPW, the Court finds Cole subject to personal jurisdiction in the Commonwealth.

## 2. Individual Oklahoma Defendants

The Court lacks jurisdiction over Danielson, Hopkins, and Lawson because they do not have substantial ties to the Commonwealth. IPW insists that jurisdiction exists because (1) Steve Hopkins signed at least one consulting agreement on behalf of TPP (now DMS/CSA), (2) Hopkins and Lawson visited Virginia once in 2010 to meet with IPW representatives, (3) DMS/CSA and IPW agreed to the Letter of Intent and Lawson signed the document on behalf of DMS/CSA,[9] and (4) Lawson signed the Supply Agreement on behalf of DFS/DOC.

These actions, coupled with between "a dozen" and "hundreds" of phone calls and emails, do not give rise to the contacts necessary for personal jurisdiction over these individuals. None of these individuals have an office or an agent in the Commonwealth,[10] they do not own property here, and they signed, on behalf of the organizations they worked for, at most two contracts where Virginia law governed disputes arising from the contract. The performance of their individual duties pertaining to the contracts took place primarily in Oklahoma. None of their activities give rise to personal jurisdiction in this Court.

### A. Jerry Danielson

The complaint mentions Jerry Danielson only a handful of times. IPW alleges that Danielson, along with the other defendants, "contrived and arranged to unlawfully sever their respective working relationships with IPW, and further, to make Mr. Cole an employee or executive of CSA/DMS and/or DOC/DFS." (Dk. No. 1-1 at 10-11.) The second time the

---

[9] Although the Letter of Intent is on Danielson Fuel Services letterhead, the signature page and the contract itself indicate DMS/CSA and IPW entered into this agreement. (Dk. No. 1-1, at 18.)
[10] As discussed above, IPW fails to allege Cole acted as an agent for any of the defendants.

complaint addresses Danielson specifically is in count three, where IPW alleges that the defendants, including Danielson, "combined to conspire with each other, by some concerted action, for the primary and over-riding purpose of willfully and/or maliciously injuring IPW in its reputation, trade, business or profession." (Dk. No. 1-1 at 14.) In the opposition brief, IPW lists Danielson once, as part of the group conspiring to injure IPW. These allegations simply do not give rise to specific personal jurisdiction. The complaint lacks any factual basis for bringing Danielson into this Court.

IPW offers no facts involving Danielson visiting Virginia, calling, emailing, or otherwise contacting individuals or entities within the Commonwealth. Further, Danielson did not sign the Supply Agreement, the only contract IPW filed suit over in this Court. IPW's conspiracy theory of jurisdiction also fails as to Danielson.[11]

### B. Steve Hopkins

IPW offers a few more facts as to Hopkins, but still fails to allege sufficient facts to bring Hopkins to a Virginia court. Hopkins visited Virginia once, spending four days in the Commonwealth between May 2 and May 5, 2010. (Dk. No. 11 at 14.) But he performed his part of the contract in Oklahoma, where he lived and worked. Hopkins also contacted Bendele in Virginia at least once by phone call or email. (Dk. No. 11-1 at ¶ 4.) But the simple exchange of phone calls, faxes, and written communications with a party in Virginia fails to establish jurisdiction.[12] The nature and quality of Hopkins' contacts demonstrate his limited relationship to the Commonwealth.

---

[11] The Court will discuss the conspiracy theory of jurisdiction as to all defendants in Section C.
[12] *See Wright v. Zacky & Sons Poultry, LLC*, No. 1:14CV570, 2015 WL 2357430, at *5 (M.D.N.C. May 15, 2015); *Consulting Eng'rs*, 561 F.3d at 281–82 (holding that, even combined with a contract's choice-of-law provision selecting Virginia law, "four brief emails, several telephone conversations about [a contract], and the exchange of the various drafts" were

9

As DMS's Director of Sales and Marketing, Hopkins signed one of the consulting agreements. (Dk. No. 11-2.) He also, along with Lawson and others, exchanged "dozens if not hundreds of emails and telephone calls" with Bendele. (Dk. No. 11-1 at ¶ 11.) Although Hopkins worked for a limited liability company with contacts in this jurisdiction, he himself lacks the contacts required to give rise to personal jurisdiction. Even though the Court finds it has jurisdiction over DMS/CSA, Hopkins' employer, "[p]ersonal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation. . . . Personal jurisdiction must be based on an individual's personal contacts or purposeful availment of the forum state." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513–14 (D. Md. 2004) (citation omitted); *see Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

The nature, quality, and quantity of Hopkins' contacts do not support a finding of personal jurisdiction. Like Hopkins, Lawson signed contracts with IPW and made phone calls to the Commonwealth, but the complaint lacks any substantial allegations regarding Lawson directing activities at the state. IPW cannot bring suit against Hopkins in this Court.

---

insufficient to show purposeful availment in the forum state); *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002) (concluding that contacting a resident of a state and "fleeting communication by telephone and fax" are not sufficient to show purposeful availment of that state's laws; *but see Peanut*, 696 F. 2d at 314 (holding the exchange of telephone calls and letters, one of which became part of the contract sued upon was sufficient to establish personal jurisdiction). The Court notes that IPW cites to *Verizon Online Servs., Inc. v. Ralsky*, but that case is inappropriate here. The defendants in that case submitted millions of emails in a business venture through email servers in the Commonwealth and the harm itself was to the Virginia based email servers. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 616 (E.D. Va. 2002); *see also American Online, Inc. v. Ambro Enterprises*, Civ. Action No. 04-1498, 2005 WL 2218433, at *4 (E.D. Va. Sept. 8, 2005) (holding that the Court had jurisdiction over defendants who purposefully spammed and harmed the plaintiff's servers).

### C. Mike Lawson

Likewise, the complaint lacks factual allegations to bring Lawson into this Court. Lawson, as the President of CSA/DMS, signed the Letter of Intent discussed previously. He also signed the Supply Agreement with IPWC as the Vice President of DFS/DOC. Although Lawson signed two contracts involving Virginia limited liability companies, he engaged in few meaningful contacts with the Commonwealth. According to Bendele's affidavit, Lawson contacted Bendele to inform Bendele that CSA/DMS felt IPW was "taking advantage of DMS" and Lawson contacted Bendele to inform him CSA/DMS would be severing its contract with IPW. (Dk. No. 1-1 at 10.)

These contacts simply fail to show that the individuals purposefully availed themselves of the Commonwealth and that their actions gave rise to this cause of action. Additionally, it would offend "traditional notions of fair play and substantial justice" to exercise personal jurisdiction over these individuals. *See Int'l Shoe*, 326 U.S. at 316. IPW fails to indicate how the Oklahoma individuals' minimal contacts with the state give rise to personal jurisdiction.

### *B. Corporate Defendants*

#### 1. DMS/CSA[13]

IPW alleges that DMS/CSA[14] is subject to personal jurisdiction in the Commonwealth because: (1) it directed phone calls and emails into Virginia, (2) Lawson and Hopkins visited

---

[13] DFS/DOC was DMS/CSA's parent company, according to the complaint. (Dk. No. 1-1, ¶ 21.)
[14] IPW briefly argues that the Court has jurisdiction over DMS/CSA and DFS/DOC under both a general jurisdiction theory and a specific jurisdiction theory. General jurisdiction requires conduct "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. Courts usually assert general jurisdiction only over nonresidents "who are essentially domiciled within the forum state." *Elec. Broking Servs., Ltd. v. E-Bus. Solutions & Servs.*, 285 F. Supp. 2d 686, 689 (D. Md. 2003) (quoting *Corry v. CFM Majestic. Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998)). IPW simply lacks the factual support for an assertion of general jurisdiction.

11

Virginia once, (3) IPW performed consulting services for DMS/CSA from Virginia,[15] (4) the parties engaged in long term business activities based upon various contracts containing Virginia choice of law provisions, and (5) Cole acted as DMS/CSA's agent and the entities conspired with their agent to injure IPW.

The Court considers the nature and quality of DMS/CSA's contacts with Virginia. DMS/CSA never maintained an office or agent in the Commonwealth.[16] DMS/CSA never owned property in Virginia, but DMS/CSA initiated the first consulting agreements with IPW and engaged in business with a Virginia limited liability company for at least three years. The parties executed at least two consulting agreements and a Letter of Intent, but these actions alone do not confer personal jurisdiction.[17] DMS/CSA also benefitted from Cole's involvement on TPP.

The Court also takes into account that DMS/CSA, through Lawson and Hopkins, allegedly visited Virginia once regarding the parties' business relationship, and Bendele visited

---

[15] "Aside from when Mr. Cole was working in Oklahoma on temporary assignment between March 2011 and April 2012, IPW performed nearly all of its consulting work for CSA from 2009 through 2012 from Virginia. IPW drafted all of TPP's or CSA's quarterly member reports and supplier reviews, among other things, from Virginia." (Dk. No. 11-1 at ¶ 10.)

[16] IPW alleges that because Cole acted as an agent for DMS/CSA, DMS/CSA is subject to personal jurisdiction in this state. It is IPW's "burden to state an adequate factual basis to show" Cole's status as DMS/CSA's agent. *See State Farm Mut. Auto. Ins. Co. v. Weisman*, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994) (party alleging agency relationship bears burden of proving it). IPW offers no factual support for its allegation regarding Cole as an agent for DMS. Thus, any argument that this Court has jurisdiction over the DMS/CSA or DOC/DFS based upon an agency theory fails. *See Guardian Pharmacy of E. NC, LLC v. Weber City Healthcare*, No. 2:12CV00037, 2013 WL 277771, at *4 (W.D. Va. Jan. 24, 2013) *report and recommendation adopted*, No. 2:12CV00037, 2013 WL 589113 (W.D. Va. Feb. 14, 2013).

[17] *See American Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 855–56 (E.D. Va. 2000) (finding that entering into a business agreement with a resident of the forum does not, on its own, create personal jurisdiction); *Burger King*, 471 U.S. at 482; *Consulting Eng'rs*, 561 F.3d at 281–82 (finding "[t]he inclusion of a choice of law clause is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that").

12

Oklahoma once regarding their relationship. From the complaint, it appears that IPW performed its primary responsibilities for DMS/CSA in the Commonwealth, through Cole's activities, and a business relationship existed through various phone calls and emails. IPW fails to indicate when these communications occurred, the extent of the communications, or the result of the communications, but the Court must construe the facts in the light most favorable to the plaintiffs at this stage.

The complaint does not give the Court a full picture of the business relationship. For instance, the parties do not indicate where the Phillips 66 presentation occurred or how frequently the parties interacted. Despite these failings, DMS/CSA and IPW clearly maintained a business relationship. The consulting agreements, numerous phone calls and emails, and Cole's work for DMS/CSA allow this Court to exercise personal jurisdiction over DMS/CSA. The Court recognizes a continuing business relationship existed between the parties.

The Court then looks to the second step of the analysis—whether the cause of action "arises out of the defendant's contacts with the forum." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (quoting *Base Metal Trading*, 283 F.3d at 213). The determination of whether jurisdiction is appropriate depends on the facts and circumstances of each case. *See Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (holding that the specific jurisdiction inquiry necessitates a study of the interconnection between the defendant, the forum, and the litigation). IPW and DMS/CSA maintained a three-year business relationship beginning in 2009 and remained in contact while Cole, as an IPW employee, worked on this project primarily from Virginia. *Cf. Incentive Travel Solutions, Inc. v. NII Holdings, Inc.*, No. 3:13CV93, 2013 WL 4833038, at *3 (W.D.N.C. Sept. 10, 2013) (discussing a six-year business relationship as

sufficient for personal jurisdiction over a nonresident defendant). The relationship gives rise to IPW's claims that DMS/CSA conspired with Cole while Cole worked for IPW.

The Court also looks at whether exercising jurisdiction over DMS/CSA is constitutionally reasonable. The defendants spend a great deal of time discussing the unreasonableness of this suit in light of the pending Oklahoma litigation. The Oklahoma litigation involves at its core a declaration that the Letter of Intent terminated. The suit in this Court primarily involves whether or not Cole tortiously interfered with IPW's business expectancies and contracts. The Court acknowledges similarities between the suits and that this Court is to look at the efficient resolution of controversies, but the Court finds these considerations do not preclude the Court from exercising jurisdiction. The Court is unpersuaded that exercising jurisdiction in this case would offend traditional notions of fair play and substantial justice.

The Court has found the first two prongs of the minimum contacts test satisfied as to DMS/CSA and consequently "it is presumptively not unreasonable to require [defendant] to submit to the burdens of litigation in" Virginia. *Consulting Eng'rs*, 561 F.3d at 278 (quoting *Burger King*, 471 U.S. at 476). Although DMS/CSA will face challenges litigating out of its home state, these difficulties do not make it constitutionally unreasonable to litigate here. Conducting business with Virginia limited liability companies "gives rise to predictable risks." *See Shaffer v. Heitner*, 433 U.S. 186, 218 (1977); *CFA Inst.*, 551 F.3d at 296 (noting "[a]s shown by these proceedings, [the defendant] has been able to secure counsel to represent its interests, and its litigation burden is thus no more substantial than that encountered by other entities that choose to transact business in Virginia."). For these reasons, the Court exercises personal jurisdiction over DMS/CSA.

## 2. DFS/DOC

IPWC alleges a breach of contract claim against DFS/DOC, and IPW alleges DFS/DOC conspired with Cole and others to injure IPW. IPWC and DFS entered into one contract, the Supply Agreement. Personal jurisdiction can exist based on a single contract, but it does not automatically confer jurisdiction. *See Burger King*, 471 U.S. at 478 (finding an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state). Courts commonly examine the following factors to determine whether a defendant has transacted business in the forum: (1) where any drafting of the contract occurred, and where the negotiations took place; (2) who initiated the contact; (3) the extent of the communications, both telephonic and written, between the parties; and (4) where the contract said the parties' performance would occur. *Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998). Ultimately, the question is whether DFS/DOC has a "'substantial connection' with the forum state." *Burger King*, 471 U.S. at 479.

As the defendants point out, IPW and IPWC fail to offer information indicating (1) where the Supply Agreement was negotiated, (2) where the contract was executed, (3) who initiated the contract, or (4) the extent of negotiations between the parties. The complaint offers no insight into where the parties contemplated that the Supply Agreement would be performed. Additionally, Bendele's affidavit indicates that DFS/DOC is the parent company of DMS/CSA, but the Court does not automatically exercise jurisdiction over the alleged parent company simply because the Court exercises personal jurisdiction over DMS/CSA.[18] The pleadings lack

---

[18] "Standing alone, the mere existence of a parent-subsidiary relationship does not conclusively indicate that a parent is within a court's jurisdiction by way of the subsidiary's in-state activities." *Omega Homes, Inc., v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 399 (W.D.Va.

information for this Court to conclude that the DMS/CSA is a subsidiary of DFS/DOC and that DMS/CSA's contacts should be imputed to DFS/DOC. Although Bendele's affidavit states that DFS/DOC provided funding to DMS/CSA, this offers little insight into the true relationship between the two entities.

The Court finds that the Supply Agreement and the surrounding circumstances fail to confer jurisdiction over DFS/DOC. Although "a single contract may properly form a constitutional basis for jurisdiction, that contract must have a substantial connection with the forum state, determined by the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Affinity Memory*, 20 F. Supp. 2d at 953 (quoting *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127–28 (4th Cir. 1986)) (internal quotation marks omitted). Acknowledging that the Supply Agreement indicates the parties' contractual relationship will last three years, the complaint lacks any indication of a truly ongoing and active relationship between these two parties. The Court simply cannot find personal jurisdiction exists based upon the presented allegations.

IPW fails to meet its burden of establishing a prima facie case of personal jurisdiction as to DFS/DOC. The Court finds no information indicating that the parties engaged in significant negotiations within the Commonwealth or contemplated future business dealings. The pleadings do not indicate the circumstances surrounding the Supply Agreement, including whether or not the contract itself was executed in Virginia. Because IPW fails to provide sufficient facts

---

1987) (citing *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)). For the court "to exercise in personam jurisdiction over a defendant parent corporation, the plaintiff should show (1) that the subsidiary's activities in Virginia are sufficient to confer jurisdiction . . . and (2) that the relationship between the parent and its subsidiary is such that the subsidiary's actions can be imputed to the parent." *Id.* at 400; *PBM Products v. Mead Johnson Nutrition Co.*, No. 3:09-CV-269, 2009 WL 3175665, at *3 (E.D. Va. Sept. 29, 2009).

establishing jurisdiction, this Court finds that it does not have jurisdiction over DFS/DOC because the entity has not purposefully availed itself of the Commonwealth.

### C. Conspiracy Theory of Jurisdiction

IPW relies on this conspiracy theory as a means of obtaining personal jurisdiction over all of the defendants.[19] When a plaintiff claims that a civil conspiracy supports personal jurisdiction, the Court employs a slightly modified analysis. *See Lolavar v. De Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005) (noting under a conspiracy theory of jurisdiction, "a conspirator not present in the forum state will, nevertheless, be adjudged to have had a personal presence in the forum state by means of adequate minimum contacts of the other conspirators."). When conspiring individuals act in a manner they could "reasonably expect to have consequences in a particular forum, if one co-conspirator who is subject to personal jurisdiction in the forum commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum." *See St. Paul Fire and Marine Ins. Co. v. Hoskins*, Civ. Action No. 5:10-cv-87, 2011 WL 1897683, at *3 (W.D. Va. 2011) (citing *Cline v. Hanby*, Civ. Action No. 2:05-0885, 2006 WL 3692847, at *7, (D.S.W. Va. Dec. 16, 2006)).

To utilize this theory, IPW must make a threshold showing that a conspiracy existed and the defendants participated. IPW offers the following in support of its claim of conspiracy: "Scott Cole, Jerry Danielson, Mike Lawson, Steve Hopkins, DMS/CSA and Danielson Oil Company of Oklahoma, combined to conspire with each other, by some concerted action, for the

---

[19] "[A] court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397–98 (4th Cir. 2004) (citing, 465 U.S. at 789–90).

17

primary and over-riding purpose of willfully and/or maliciously injuring IPW." (Dk. No. 1-1 at 14.) IPW alleges that DMS/CSA and the other defendants conspired to breach DMS/CSA's contractual duties and Cole's employment simultaneously. IPW offers no allegations of how the parties conspired, when they conspired, or what actions took place in the state of Virginia in furtherance of the conspiracy. IPW offers nothing more than bare allegations a conspiracy took place.[20] The factual section of the complaint offers no information regarding the basis for the conspiracy. For these reasons, the conspiracy theory of jurisdiction fails.

### III. Conclusion

For the reasons stated, the Court GRANTS the motion to dismiss as to Danielson, Lawson, Hopkins and DFS/DOC. The Court DENIES the motion to dismiss as to Cole and DMS/CSA. The Court will issue the appropriate order.

IT IS SO ORDERED.

Let the Clerk send a copy of this opinion to all counsel of record.

---

[20] IPW's conspiracy theory with respect to the Oklahoma defendants also fails because a corporation may not conspire with itself. Since a corporation is a legally created entity, "it can only act through its agents, officers, and employees; therefore, a conspiracy between a corporation and the agents of that corporation who are acting within the scope of their employment is a legal impossibility." *Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 238 (W.D. Va. 1988) (citing *Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1978)). IPW calls Cole an "agent" of DMS/CSA or DOC/DFS, and in that case, it would be impossible for any of the defendants to conspire with one another. The Court withholds ruling on the conspiracy claim, but for the purposes of the motion to dismiss for lack of personal jurisdiction, IPW fails to state a plausible conspiracy theory in support of personal jurisdiction for the alleged co-conspirators.

18

Date: 8/5/15

Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge